526 P.2d 1073

**STATE of Arizona, Appellee,**

v.

**Dan Reed GOODMAN, Appellant.**

**No. I CA–CR 613.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 3, 1974.

Rehearing Denied Nov. 12, 1974.

Eubank, J., concurred in the result.

**276**

Gary K. Nelson, Former Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Green & Berman, P. C. by Norman E. Green and David M. Berman, Phoenix, for appellant.

## OPINION

HAIRE, Presiding Judge.

Defendant-appellant Dan Reed Goodman was found guilty of the charge of grand theft by false representation and received a sentence of not less than six nor more than seven years imprisonment at the Arizona State Prison.

On appeal he raises several questions, primarily concerning the corroboration requirements of A.R.S. § 13-664 and the sufficiency of the evidence to show that the crime charged was committed.

The indictment accused the defendant of the crime of "Grand Theft by False Representation", and charged that he did "knowingly and designingly, [by] false or fraudulent representation or pretense, defraud one MARTHA D. RAYMOND, of money valued in excess of $100.00, all in violation of A.R.S., Secs. 13-661, 13-663(A), 13-664 and 13-671(A)."

The facts, taken in a light most favorable to sustaining the jury's verdict, show that the defendant had at one time been employed by the Standard Life and Accident Insurance Company, but that at the time of the incidents here in question, he no longer had any connection with that company.

In September 1972 he went to the home of an elderly widow, Mrs. Martha Raymond, and asked to see her. He then handed Mrs. Raymond a Standard Life business card with the name "F. Jennings" written on it. Mrs. Raymond then asked what the "F" stood for, and he replied, "Floyd". The evidence is not clear as to whether defendant told her in so many words "I am Floyd Jennings", but we deem this immaterial, as the jury could certainly have found from the foregoing that by his conduct he represented himself to be Floyd Jennings. *Cf.* Rex v. Barnard, 7 Car. & P. 784. There is nothing in the record to indicate that there was in fact any such person as Floyd Jennings. After telling Mrs. Raymond that he was working for Standard Life, defendant offered to consolidate two policies which Mrs. Raymond had with the company, but she was not interested and so advised him. Apparently his knowledge of Mrs. Raymond's insurance status had been gained when he was previously employed by Standard Life.

Defendant then proceeded to try to interest Mrs. Raymond in an alleged bond program from Standard Life. He gave her a pamphlet from the company indicating a net worth of $77,000,000. He told her that the bonds would pay ten per cent. After several visits to Mrs. Raymond's home, the defendant took her to a savings

and loan institution where she withdrew $25,000 from her account, receiving a check drawn on the bank and payable to herself. ' She testified that the defendant then took the check from her, drove her home, and obtained her signature on two sheets of blank Standard Life stationery. She further stated that she allowed the defendant to keep the check so that he could purchase corporate bonds for her; that she believed his representation that he worked for Standard Life and could purchase bonds; and that she had never endorsed the check. A fair summary of additional evidence is that Mrs. Raymond gave the check to the defendant feeling that he could only hold it pending her endorsement at the time of the purchase of the bonds.

Later, defendant deposited the $25,000 check, which then bore the purported endorsement of Mrs. Raymond, to an account entitled "Southwestern States Securities, Inc.". After the check cleared, defendant withdrew the $25,000 in the form of two cashier's checks payable to himself, and $10,000 in cash. Subsequently, not having received any bonds from defendant, Mrs. Raymond became suspicious enough to contact the authorities, and after investigation defendant was indicted for the crime of grand theft by false representation and arrested.

The indictment was quite specific and, as previously stated, charged the defendant as follows:

"The Grand Jurors of the county of Maricopa, in the name of the state of Arizona, and by its authority accuse DAN REED GOODMAN of the crime of GRAND THEFT BY FALSE REPRESENTATION, a felony and charge that on or about the 6th day of October, 1972, in Maricopa County, Arizona, and before the bringing of this indictment, the said DAN REED GOODMAN, knowingly and designingly, be [sic] false or fraudulent representation or pretense, defraud one MARTHA D. RAYMOND, of money valued in excess of $100.00, all

in violation of A.R.S., Sec. 13–661, 13–663(A), 13–664 and 13–671(A)."

The state admits that by reason of the limiting language contained in the indictment, the reference to A.R.S. § 13–661 must be construed as a reference to subsection A(3) of that statute which reads as follows:

"A. Theft is:

\*　\*　\*　\*　\*　\*

"3. Knowingly and designingly, by any false or fraudulent representation or pretense, defrauding any other person of money, labor or property, whether real or personal."

Although defendant raises several questions on this appeal, the question which we deem dispositive concerns the corroboration requirements of A.R.S. § 13–664 and the trial judge's jury instructions relating thereto. A.R.S. § 13–664 provides:

"A. Upon a trial for having obtained the signature of a person to a written instrument, or having obtained from a person money, personal property or other valuable thing, with an intent to cheat or defraud another designedly by any false pretense, defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof, is in writing, subscribed by or in the handwriting of defendant, or unless the pretense is proved by the testimony of two witnesses, or that of one witness and corroborating circumstances.

"B. Subsection A of this section shall not apply to a prosecution for falsely representing or personating another, and, in such assumed character, marrying or receiving money or property."

Defendant contends that under the indictment and the facts of this case, § 13–664A is applicable and that corroboration is required of the false representations allegedly made by him. The state, on the other hand, contends that § 13–664B applies, and that corroboration was not re-

quired. It was the state's theory that defendant "represented himself as someone other than what he was, in violation of § 13–664B, a representative of Standard Life, a wealthy company that Mrs. Raymond was familiar with." Defendant counters this argument by pointing out that the language of § 13–664B is practically identical to that of A.R.S. § 13–412,[1] dealing with the crime of false personation, and that therefore subsection B must be interpreted as eliminating the corroboration requirement for the crime of false personation only, a crime with which defendant was not charged.

Faced with these opposing contentions, the trial judge not only instructed the jury concerning the corroboration requirements of § 13–664A, but also, over defendant's objections, instructed the jury in the language of subsection B to the effect that no corroboration was required in a prosecution for falsely personating another and in such assumed character receiving money or property. This subsection B instruction was immediately followed by an instruction presenting *in haec verba* the language of A.R.S. § 13–412, the statute setting forth the crime of false personation.

■ We agree with the defendant that under the circumstances of this case the trial court committed reversible error in instructing the jury not only concerning false personation, A.R.S. § 13–412, a crime with which defendant was not charged, but also in instructing the jury so as to allow a conviction without compliance with the corroboration requirements of § 13–664A.

In our opinion A.R.S. § 13–412 has no application to the facts in this case. It is clear from the language of that statute that it contemplates the impersonation of another actual person, and in such assumed character receiving money or property intended to be delivered to such actual person. Here, there is no evidence showing that "F. Jennings" was an actual person, or that any reliance was placed on defendant's identification of himself as "F. Jennings". Rather, the evidence shows that Mrs. Raymond's reliance was based upon defendant's represented status as an employee of Standard Life, and thus in a position to know about that company's bonds and aid her in obtaining them. A somewhat analogous situation was presented to the Arizona Supreme Court in an early appeal, Erickson v. State, 14 Ariz. 253, 127 P. 754 (1912). There the alleged misrepresentation of the defendant was that he was an attorney at law and therefore able to aid the complainant in obtaining a divorce. On appeal the Arizona Supreme Court reversed the defendant's conviction, holding that the Arizona statutes (substantially identical to those in existence now) clearly required corroboration of defendant's alleged misrepresentation as to his status as an attorney.

■ In its brief submitted in this Court, the state admits that § 13–412 is not applicable to the facts of this appeal, but still somehow contends that "a clearer case of a section B [§ 13–664B] violation could not be had". We disagree. In our opinion a false representation of an individual's status, that is, as an employee of a certain company, as an attorney or otherwise, does not bring into play the corroboration exemption provisions of § 13–664B. By this holding, we do not intend to say that the corroboration requirements of § 13–664A are applicable to all false representation crimes which might be charged under § 13–661A(3), since in particular circumstances the facts supporting a § 13–661A (3) false representation charge might also be sufficient to support a § 13–412 false personation violation. In such event, we believe that § 13–664A would not be applicable. However, here the facts as de-

1. A.R.S. § 13–412 reads as follows:

"A person who falsely personates another in either his private or official capacity, and in such assumed character receives money or property, knowing that it is intended to be delivered to the individual so personated, with intent to convert the money or property to his own use or that of another person, or to deprive the true owner thereof, shall be punished in the same manner and to the same extent as for theft of the money or property so received."

veloped at trial would not have supported a § 13–412 charge. Therefore the trial judge erred in instructing the' jury so as to allow a conviction without compliance with the corroboration provisions of § 13–664A. The legislature having imposed strict corroboration requirements concerning crimes of the type involved here, this Court must follow the law and cannot ignore the statutory mandate. Therefore the conviction must be reversed.

In view of the foregoing disposition, it is not necessary for us to discuss the defendant's contention that in a prosecution for obtaining property by false pretenses, the evidence must show that the victim intended to pass title and not mere possession to the defendant, a difficult issue to which the state has not responded.

The judgment of conviction is reversed and the matter is remanded to the trial court for a new trial or further proceedings not inconsistent with this opinion.

JACOBSON, C. J., concurs.

EUBANK, J., concurs in the result.