727 P.2d 14

**STATE of Arizona, Appellee,**

v.

**Anthony Tony HARRIS, Appellant.**

**No. CR–86–0085–PR.**

Supreme Court of Arizona,
En Banc.

Oct. 1, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, and Janet Keating Asst. Attys. Gen., Phoenix, for appellee.

Charles L. Weninger, Tucson, for appellant.

HAYS, Justice.

After a jury trial, defendant, Anthony Tony Harris, was convicted of burglary in the first degree, A.R.S. § 13–1508(A), and theft by control of property having a value of $500 or more but less than $1,000, A.R.S. § 13–1802(A)(1) and (C). The trial court sentenced Harris, a repeat offender, to concurrent presumptive terms of 15.75 years for the first degree burglary and 10 years for the theft by control. The court of appeals affirmed the convictions and sentences per curiam in *State v. Harris,* 2 CA–CR 3994, filed February 6, 1986.

Defendant petitioned this court for review. He asserts that the trial court erred (1) by failing to exclude expert state evidence demonstrating the difficulty of obtaining fingerprints at the scene of the crime; and (2) by failing to instruct the jury on the meaning of "armed"—an element of first degree burglary. We granted review and have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3); A.R.S. § 13–4035.

On October 25, 1984, a police officer observed Harris and an accomplice, Kenneth Grimes, driving a vehicle in north Tucson.

The officer observed the men park the vehicle and walk into open desert. Two police officers observed the men returning to the vehicle approximately one and one-half hours later. Defendant was carrying a white bag which he concealed under his shirt as he approached his vehicle. He then placed the white bag in the vehicle's trunk and the men drove away. The white bag was subsequently discovered to be a pillowcase taken from a burglarized home. Police officers found a pistol, ammunition, a buck knife, and jewelry, also taken from the same home, inside the pillowcase. Defendant was not observed entering or leaving the burglarized house and his fingerprints were not discovered at the scene of the crime.

Upon his conviction, defendant admitted three prior felony convictions and, in exchange, the state dismissed its allegation that the offenses were committed while on parole.

Defendant objects to two separate aspects of his trial. First, defendant objects to the trial court's failure to fully grant his motion *in limine* to preclude the state from presenting expert testimony on the difficulty of obtaining fingerprints at the scene of a crime. Defendant made the motion when he discovered that the state planned to ask the investigating police officer about the difficulty of obtaining fingerprints in certain circumstances. While the trial court ordered the state to avoid any questions during direct examination of the investigating officer concerning the absence of fingerprints, the court reserved further rulings on the same issue until defense counsel examined the witness.

■ We find that defendant's first objection is without merit. Defendant contends that he was prevented from presenting the strongest part of his defense—the absence of his fingerprints from the burglarized home—when the trial court denied his motion.

Defendant, however, was not prevented from presenting a fingerprint defense at trial. The trial court actually granted his motion in part and ordered the state to refrain, during direct examination, from questioning the officer on the difficulty of obtaining fingerprints. The trial court did not issue any ruling barring the defendant from questioning the investigating officer on the absence of defendant's fingerprints in the burglarized home. In fact, the trial court explicitly acknowledged the possibility that the defense counsel would explore the absence of fingerprints when it ruled that the state could not present any testimony on the absence of fingerprints:

> Well, I'll order that on your direct examination with McCoy [the investigating officer] you [the state] will not get into the fingerprint issue and/or lack of fingerprints, *and we'll see what Mr. Benedict [defense counsel] does* (emphasis added).

■ Defendant, though, chose not to question the investigating officer about the absence of fingerprints. Accordingly, he cannot claim that he was prevented from presenting a defense based upon the absence of fingerprints. Defendant also cannot successfully claim that the trial court's reserved ruling on the issue of admissibility of testimony constituted reversible error. Although defendant argues that the trial court left open the possibility that inadmissible "speculative negative evidence" would be allowed on redirect, he failed to question the investigating officer concerning the absence of fingerprints and accordingly waived any argument based upon what would have happened had he chosen to question the officer about the absence of fingerprints. *State v. Thomas*, 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981).

Second, defendant asserts that the trial judge erred when charging the jury on the elements of first degree burglary. While defendant agrees that the trial judge correctly stated that a burglar must be armed to be convicted of first degree burglary, defendant objects to the trial court's failure to define *sua sponte* the term "armed" when the court charged the jury. We believe that defendant's conviction for first degree burglary should stand despite the trial court's failure to instruct the jury on the definition of "armed." In Arizona, bur-

glary of a residential structure is normally a second-degree felony under A.R.S. § 13-1507. If, however, the burglar is "armed with explosives, a deadly weapon or a dangerous instrument" during the crime, he commits a first-degree felony. A.R.S. § 13-1508(A). A loaded or unloaded pistol is a deadly weapon. A.R.S. § 13-105(9), (12). Whether Harris committed first-degree burglary, therefore, turns solely on whether or not Harris was "armed."

Since the defendant's trial, we have clarified further the meaning of "armed" as an element of first-degree burglary. In *State v. Befford*, 148 Ariz. 508, 715 P.2d 761 (1986), we held that a weapon or dangerous instrument obtained by a burglar during the course of a burglary and held as loot or stolen goods did not by itself "arm" the burglar within the meaning of the Arizona first-degree burglary statute. *Id.* at 510, 715 P.2d at 763. Rather, to come within the statute, the burglar must have demonstrated a "willingness or present ability to use" the weapon or dangerous instrument. *Id.; Accord State v. Romero*, 135 Ariz. 102, 659 P.2d 655 (App.1982) (burglar who placed stolen pistol in his belt and later pointed the pistol at police officers is "armed" within the meaning of the first-degree burglary statute).

The present case and *Befford* are similar in several ways. In *Befford*, we looked to the physical inaccessibility of the stolen weapon and the commingling of the weapon and other loot when we held that the defendant was not armed. The defendant in this case placed the stolen pistol inside a pillowcase and subsequently placed the pillowcase under his shirt and then in the trunk of his car. Furthermore, defendant placed all his stolen items inside the pillowcase, thereby commingling weapons and nonweapons. These actions by the defendant would certainly provide adequate foundation for a jury verdict of second-degree burglary.

■ We will not, however, disturb Harris' conviction for first-degree burglary.

Harris did not submit any definition of "armed" to the trial court in his list of requested instructions. He did not object when the trial court charged the jury. He did not object when the state set forth its definition of "armed" during closing arguments. Harris, therefore, has waived this issue on appeal unless the trial court's failure to define "armed" amounts to fundamental error. *State v. Thomas*, 130 Ariz. at 435, 636 P.2d at 1217.

■ Fundamental error has been defined by this court "as such error as goes to the foundation of the case or takes from the defendant a right essential to the defense," and as "error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial." *State v. Thomas*, 130 Ariz. at 435-36, 636 P.2d at 1217-18. Although an instruction on the meaning of "armed" would have been desirable given the factual issues confronting the jury, we do not think the failure to give that definition was fundamental error.

First, "armed" is a word whose common meaning closely corresponds with its technical meaning. We have held previously that trial courts do not commit fundamental error when they fail to provide *sua sponte* the jury with the definitions of words whose legal and ordinary meanings overlap. *State v. Barnett*, 142 Ariz. 592, 594-95, 691 P.2d 683, 685-86 (1984) (trial court did not commit fundamental error in failing *sua sponte* to instruct the jury as to the definition of "intentionally"). Second, the trial court's failure to define "armed" did not prevent the defendant from arguing to the jury that he was not, in fact, armed. The ordinary meaning of "armed" would have supported such an argument if the defendant had presented it to the jury. Finally, Harris, unlike the defendant in *Befford*, cannot unequivocally be said to have been unarmed. He was observed carrying the pillowcase some distance away from the burglarized home. The jury was entitled to conclude that the pistol inside the pillowcase was readily accessible dur-

ing his travels from the burglarized home to his vehicle and that Harris was willing to use the weapon during those travels. Accordingly, we cannot say that the trial court's failure to define the term "armed" when instructing the jury took from the defendant an opportunity for a fair trial.

We have reviewed the record for fundamental error and have found none. A.R.S. § 13–4035; *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

The opinion of the court of appeals is approved. The judgments of conviction and sentences of the trial court are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.