742 P.2d 1352

**STATE of Arizona, Appellee,**

v.

**John Luther WILLIAMS, Appellant.**

**No. CR 86–0286–AP.**

Supreme Court of Arizona,
In Banc.

Sept. 3, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Diane M. Ramsey, Ronald L. Crismon, and John Barkley, Asst. Attys. Gen., Phoenix, for appellee.

Alan M. Metcalfe, Tucson, for appellant.

CAMERON, Justice.

## JURISDICTION

Defendant John Luther Williams was convicted of aggravated assault with a deadly weapon, A.R.S. § 13–1204; first-degree burglary, A.R.S. § 13–1508; second-degree burglary, A.R.S. § 13–1507; offenses of a dangerous nature, A.R.S. § 13–604; and theft by control, A.R.S. § 13–1802, all committed while defendant was on probation for two prior felony convictions. Defendant received sentences of 11.25 years on the theft and burglary counts, and sentences of twenty-five years to life on the counts of aggravated assault and first-degree burglary, pursuant to A.R.S. § 13–604.02(A). Because defendant received life sentences, this court has exclusive jurisdiction on appeal. Ariz. Const., art. VI, § 5(3); A.R.S. §§ 13–4031, –4033, –4035. We ordered the matter transferred from the court of appeals where it had been previously and erroneously lodged.

## ISSUES

Two issues are raised on appeal. First, defendant contends that the jury instruc-

tion defining first-degree burglary was reversible error. Second, the state, in its cross-appeal, argues that the trial court improperly refused to preclude defendant's expert evidence on the issue of insanity.

## FACTS

The facts are not in dispute. On 11 June 1985 at approximately one a.m., Alyson Miller awoke when a man's hand covered her mouth. She struggled and bit his hand. The intruder ran out the front door. Her husband, Samuel Miller, awoke and pursued the intruder outside where he discovered defendant, the intruder, attempting to start the Millers' car. Defendant ordered Mr. Miller back inside the house. Defendant followed Mr. Miller back into the house while holding in front of him a butcher knife previously taken from the Millers' kitchen. Mr. Miller picked up a coffee table to defend himself. Mrs. Miller screamed "take the car," and defendant fled.

In response to the Millers' phone call, the police helicopter spotted the Millers' car and patrol officers apprehended defendant as he ran from the vehicle. Upon arrest, defendant had a bite mark on his hand, and the Millers' jewelry and wire cutters in his pockets. On the car's front passenger-side floorboard was the butcher knife and in the back was the Millers' television, with its cables cut.

Defendant was found competent to stand trial. Defendant presented a defense of insanity at trial. He was convicted on all four counts, with aggravated assault and first-degree burglary found to be offenses of a dangerous nature. Defendant waived his right to a jury trial on the issue of prior convictions. The trial court found that defendant had been convicted of two previous felonies and was on probation at the time of the current offenses. The court ordered that defendant's sentences of 11.25 years and twenty-five years to life be served concurrently but consecutive to the other sentences imposed. Defendant appealed.

## JURY INSTRUCTION

Defendant claims reversible error in the trial court's instruction on first-degree burglary. The instruction given was the following:

A person ... commits burglary in the first degree, if such person or an accomplice commits burglary in the second-degree and is armed with a deadly weapon in the course of committing any theft or any felony.

*Theft of a knife after entering a structure, standing alone, is sufficient to establish burglary in the first degree.*

A person commits burglary in the second degree by entering or remaining unlawfully in a residential structure with the intent to commit any theft or any felony therein.

(Emphasis added.)

In Arizona, the burglary of a residential structure is normally second-degree burglary under A.R.S. § 13-1507. If, however, the perpetrator is "armed with explosives, a deadly weapon or a dangerous instrument" in the course of committing the crime, it becomes first-degree burglary. A.R.S. § 13-1508(A). A deadly weapon is defined by A.R.S. § 13-105(10) to mean "anything designed for lethal use." A knife can be a deadly weapon for the purposes of the statute. Cf. *State v. Lucas*, 146 Ariz. 597, 708 P.2d 81 (1985).

The statutory definition of "armed" under A.R.S. § 13-1508 has been the subject of judicial interpretation. In *State v. Romero*, 135 Ariz. 102, 659 P.2d 655 (App. 1982), the court of appeals stated: "A person is 'armed' with a deadly weapon when such weapon is within his immediate control and available for use in the crime." *Id.* at 105, 659 P.2d at 658. The defendant in *Romero* stole a pistol and holster during the burglary of a residence and apparently stuck it inside his belt. When police arrived on the scene, Romero pulled the gun, still in its holster, and pointed it at an officer. The court held that "a person can become armed with a deadly weapon even if the weapon is one taken during the course of the burglary." *Id.* at 104, 659 P.2d at 657. It would appear that the court considered the use to which the gun was put after its theft and properly held that

the defendant was armed during the burglary.

We examined what constitutes being "armed" with a weapon stolen during a burglary in *State v. Befford,* 148 Ariz. 508, 715 P.2d 761 (1986), an opinion issued after the trial in the instant case. In *Befford,* the defendant burgled a residence and was observed by the police leaving through a window. When the police entered the residence, they found several items of value placed near the front door, including the victim's unloaded .12–gauge shotgun in a zippered case. We found that under these facts, the defendant was not "armed" with a deadly weapon, stating: "In order to be 'armed' within our burglary statue, a defendant must possess the item considered a deadly weapon or dangerous instrument in such a manner as to indicate his willingness or present ability to use it as a 'weapon'." *Id.* at 510, 715 P.2d at 763. Again, the use to which the burglar put the stolen gun was critical.

■ We believe that our recent opinion in *State v. Harris,* 151 Ariz. 236, 727 P.2d 14 (1986) is dispositive of this matter. In *Harris,* we stated that "a weapon or dangerous instrument obtained by a burglar during the course of a burglary and held as loot or stolen goods did not by itself 'arm' the burglar within the meaning of the Arizona first-degree statute." *Id.* at 238, 727 P.2d at 16. An instruction that the "[t]heft of a knife after entering a structure, standing alone, is sufficient to establish burglary in the first degree" is, therefore, an incorrect statement of law.

The state contends, however, that if this instruction was error, it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We do not agree.

■ Where the effect of the incorrect instruction lessens the state's burden of proof, the error is harmful. *See State v. Walker,* 138 Ariz. 491, 675 P.2d 1310 (1984) (arson); *State v. Noriega,* 144 Ariz. 258, 697 P.2d 341 (App.1985) (trafficking in stolen property); *State v. O'Brien,* 123 Ariz. 578, 601 P.2d 341 (App.1979) (conspiracy); *State v. Cappe,* 122 Ariz. 249, 594 P.2d 115 (App.1979) (assault with a deadly weapon); *State v. Goodman,* 22 Ariz.App. 275, 526 P.2d 1073 (App.1974) (grand theft by false pretenses). Admittedly, a number of cases have affirmed the defendant's conviction despite erroneous instructions where the facts in the record showed the defendant guilty beyond a reasonable doubt. *See State v. Seelen,* 107 Ariz. 256, 485 P.2d 826 (1971) (grand theft); *State v. Mann,* 129 Ariz. 24, 628 P.2d 61 (App.1981) (third-degree burglary); *State v. Snodgrass,* 121 Ariz. 409, 590 P.2d 948 (App.1979) (obstruction of justice).

■ In the instant case, however, the erroneous jury instruction precluded the jury from even considering the defendant's willingness or present ability to use the stolen knife as a "weapon." Even though it might be said that the defendant was "armed" when he followed the husband back into the house while holding the butcher knife, under the instruction given the jury did not have to reach that question. The instruction allowed the jury to find that the defendant was "armed" as soon as he picked up the knife, regardless of the reason for which the knife was taken. The result is the same as if the trial court had directed a verdict on that element of the offense, which is impermissible.

Given that the instant instruction prevented the jury from finding every element of the offense, we do not believe *Pope v. Illinois,* —— U.S. ——, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987), and *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), apply. In both cases, the Supreme Court held that the erroneous instructions did not preclude the jury from considering the element of the offense. In *Pope,* the jury was erroneously instructed to determine the value of an allegedly obscene magazine by reference to community, rather than objective, standards. The Court nevertheless upheld the conviction because "the jurors were not precluded from considering the question of value: they were informed that to convict they must find, among other things, that the magazines ... were utterly without redeeming social value." *Pope,* —— U.S. at ——, 107 S.Ct. at

1922. Similarly in *Rose*, the jury in a murder case was instructed that all homicides are presumed malicious. The Court held that such an instruction would not preclude the jury from considering the element of malice where the jury was also instructed to find the predicate facts establishing defendant's intent. *Rose*, — U.S. at — & n. 8, 106 S.Ct. at 3107–08 & n. 8. We reverse defendant's conviction of first-degree burglary and order a new trial on that charge only.

## EXPERT WITNESS ON INSANITY DEFENSE

Before trial, defendant declared his intent to invoke an insanity defense. The state's appointed psychiatrist, Dr. Bernard Morenz, examined defendant. During the examination, defendant was evasive and uncooperative, responding "I don't know" to many questions, and also denied having any memory of the time period during which the burglary occurred. Dr. Morenz was unable to elicit any kind of detailed background of defendant's medical history. After reviewing the notes of the defendant's psychologist, Dr. Michael Brad Bayless, Dr. Morenz believed that defendant was consciously attempting to avoid answering questions during the examination. Based on Dr. Bayless' report, Dr. Morenz considered defendant competent to stand trial.

At the competency hearing, the state moved, pursuant to A.R.S. § 13–3993(B), that the defendant's expert witness be precluded from testifying on the issue of insanity because defendant had refused to cooperate with the state's psychiatrist. Alternatively, the state asked that the defendant subject himself to re-examination. Defendant was re-examined voluntarily by Dr. Morenz, but continued to be uncooperative. Based on the examinations and aided by reports prepared by other mental health experts who previously had examined defendant, Dr. Morenz concluded that defendant was malingering to avoid criminal prosecution and offered the diagnosis of adjustment disorder and antisocial personality disorder. The state again motioned to pre-

clude the insanity defense; the trial court denied the motion.

At trial, Dr. Bayless testified as to his diagnosis of paranoid schizophrenia. Dr. Morenz rebutted that diagnosis. The jury found defendant guilty on all counts.

In its cross-appeal, the state claimed that the denial of its motion was error based on defendant's refusal to cooperate. The state bases its argument on A.R.S. § 13–3993(B), which provides:

> If a defendant in a criminal prosecution refuses to be examined by mental health experts nominated by the state, the court shall preclude the defendant from offering expert evidence of the defendant's mental state at the time of the alleged crime.

We must determine whether defendant, by his uncooperative and evasive responses, "refused to be examined" within the meaning of A.R.S. § 13–3993(B). In the case cited to us by the state where the defendant refused to talk to the state's mental health expert on fifth amendment grounds, the court held that introducing testimony of defendant's refusal was not an impermissible comment on the defendant's privilege against self-incrimination. *Karstetter v. Cardwell*, 526 F.2d 1144 (9th Cir.1976). *But see Wainwright v. Greenfield*, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). This is not the claim here. Equally inapplicable is the case cited by the state for the proposition that "psychiatric inquiry cannot succeed unless the defendant cooperates...." *United States v. Leonard*, 609 F.2d 1163, 1165 (5th Cir. 1980). The court in *Leonard* was concerned with statements made by the defendant to the prosecution's psychiatrist being used for impeachment. *Id.* The court held that defendant's statements could be used solely on the issue of insanity so as to protect the integrity and reliability of the psychiatric interview. *Id.* at 1167.

 In the instant case, defendant *was* examined by Dr. Morenz. Although defendant was uncooperative and evasive, his behavior provided support for Dr. Morenz's diagnosis of malingering to avoid criminal

prosecution. The trial court found that Dr. Morenz, aided by collateral sources, was able to reach a conclusion about defendant's ability to tell right from wrong at the time of the burglary. Based on these facts, the court did not err in allowing defendant's expert witness to testify on the issue of insanity.

We have reviewed the record for other fundamental error and have found none. A.R.S. § 13–4035; *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). We affirm defendant's convictions and sentences as to all counts other than first-degree burglary. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and HOLOHAN and MOELLER, JJ., concur.