NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ADAM BARFIELD, *Appellant*.

No. 1 CA-CR 17-0199
FILED 10-2-2018

Appeal from the Superior Court in Maricopa County
No. CR2014-002527-002
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Brown & Little, P.L.C., Chandler
By Matthew O. Brown
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Diane M. Johnsen joined.

**C R U Z**, Judge:

¶1      Adam Barfield appeals his conviction and sentence for money laundering in the second degree. Barfield argues the superior court erred when it: 1) denied his motion to sever; 2) denied his motion for judgment of acquittal; 3) allowed the State to play recordings of testimony in closing argument; and 4) determined that he could not receive presentence incarceration credit for time he was imprisoned on a prior charge. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY[1]

¶2      Detectives believed that Robert McLaughlin, Stephen Lacy, and Barfield were using a purported modeling studio, "Club Lace," to operate a house of prostitution. In an undercover investigation, detectives learned that the club contained a series of private rooms where the "models" performed sex acts for money, Lacy acted as the "hiring manager," and the club's management received a split of all profits.

¶3      Detectives obtained multiple search warrants for the club, Lacy's home, and McLaughlin's home, and found evidence of prostitution. Detectives also discovered various items connecting Barfield's name to the club, including the contract for the ATM machine, the trade name, and the business credit card.

¶4      During the investigation, detectives learned that Barfield was serving a term of imprisonment in the Arizona Department of Corrections ("DOC"). In recorded phone calls from the DOC, Barfield spoke with Lacy and McLaughlin regarding the club's credit card machine, ATM machine, advertisements, door fees, and employee contracts. Barfield also spoke with his brother, Cary Barfield ("Cary"), and told him to place money

---

[1]      We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

received from Lacy and McLaughlin in his prison account. DOC documentation confirmed that Cary placed money in Barfield's prison account. Cary admitted to detectives that he had done so, that he suspected the club was used for more than modeling, and he told Barfield not to accept the money.

**¶5**        Two former employees admitted that they engaged in prostitution at the club, it was structured like a "brothel," and they worked with multiple other women.[2] They stated that Lacy and McLaughlin ran the club and received 40 percent of all profits. One of the employees saw Barfield's name on the club's business license and believed Barfield to be a "co-owner."

**¶6**        The State charged Barfield and Cary with one count of money laundering in the second degree (Count 5); and Lacy and McLaughlin with conspiracy to commit illegal control of an enterprise, illegal control of an enterprise, money laundering in the first degree, and operating or maintaining a house of prostitution (Counts 1-4).

**¶7**        The jury found Barfield, Lacy, and McLaughlin guilty as charged, but found Cary not guilty. The jury found that two aggravating factors applied to Barfield's offense. The superior court found that Barfield had one prior felony conviction and sentenced him to the minimum term of 4.5 years' imprisonment with 82 days of presentence incarceration credit.

**¶8**        Barfield filed a timely appeal and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

  I.   Motions to Sever

**¶9**        Barfield argues the superior court abused its discretion when it denied his motions to sever.

**¶10**        We typically review a superior court's ruling on a motion to sever for a clear abuse of discretion. *State v. Cruz*, 137 Ariz. 541, 544 (1983) (citation omitted). If the motion to sever is not properly renewed during trial, however, the issue is waived on appeal, Ariz. R. Crim. P. 13.4(c), and

---

[2]        A detective testified that the club was a "one-on-one establishment" with "private rooms . . . like a brothel."

we review for fundamental error only. *State v. Laird*, 186 Ariz. 203, 206 (1996).

**¶11**    Barfield filed two pretrial motions to sever, arguing that his case should be severed from that of his codefendants and his count severed from all other counts. Barfield claimed that joinder was improper under Arizona Rule of Criminal Procedure 13.3(a) and evidence offered on his codefendants' cases would unfairly prejudice his defense. The superior court denied the motions, holding that evidence regarding the overall operation of the club was relevant to Barfield's case and joinder was appropriate. The court, however, ordered the sanitization of any statements made by Barfield's codefendants that would be prejudicial, cumulative, irrelevant, or barred under *Bruton v. United States*, 391 U.S. 123, 126 (1968). Because Barfield did not renew his motions to sever, we review for fundamental error. *See State v. Harris*, 151 Ariz. 236, 238 (1986) (defining fundamental error as "such error as goes to the foundation of the case or takes from the defendant a right essential to the defense [or] error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial.") (internal quotation and citation omitted).

**¶12**    None of the defendants testified at trial, and, in closing arguments, each of them argued the State failed to prove they engaged in or profited from an illegal business and any statements made by Cary were coerced. On multiple occasions, the court instructed the jury to consider the defendants' charges, conduct, and statements as if they were tried separately.

**¶13**    A joint trial is proper if evidence pertaining to the counts or defendants would be admissible if tried separately. Ariz. R. Crim. P. 13.3(a)-(b), 13.4(b); *see also State v. Murray*, 184 Ariz. 9, 25 (1995). However, severance is required if joinder would hinder a fair determination of a defendant's guilt or innocence. Ariz. R. Crim. P. 13.4(a). "In making this determination, the trial court is to consider . . . any antagonism between the respective defenses or any prejudicial impact certain evidence admitted against one defendant may have on another." *State v. Flythe*, 219 Ariz. 117, 119, ¶ 5 (App. 2008) (citation omitted). The court must also consider whether a codefendant's confession that inculpates another defendant is prohibited under *Bruton*. 391 U.S. at 126; *but see Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (upholding the admission of a non-testifying codefendant's confession if it is sanitized and a limiting instruction is provided).

¶14        Barfield and his codefendants presented harmonious defenses and we find no issues regarding the cross-admissibility of the evidence presented at trial.  Barfield's codefendants did not testify, their statements were properly sanitized, and limiting instructions were provided.  As sanitized, the codefendants' statements were relevant to show the illegal nature of the business, which was an element of the charge against Barfield.  Nothing in the record indicates that joinder prevented the jury from making a fair determination as to Barfield's guilt.  The superior court did not commit fundamental error in denying Barfield's motions to sever.

II.    Motion for Judgment of Acquittal

¶15        Barfield argues the superior court erred when it denied his motion for judgment of acquittal based on insufficiency of the evidence. We review a superior court's denial of a motion for judgment of acquittal *de novo*, viewing the evidence in the light most favorable to sustaining the verdict.  *State v. Bible*, 175 Ariz. 549, 595 (1993).

¶16        Before the verdict, Barfield moved for judgment of acquittal. *See* Ariz. R. Crim. P. 20(a)(1).  The superior court denied the motion, finding the State presented substantial evidence Barfield committed the charged offense.  After the verdict, the motion was renewed and denied.  *See id.* (b)(1).

¶17        In determining whether the superior court properly denied a motion for judgment of acquittal, the relevant question is whether there was substantial evidence to support the jury's verdict.  *See id.* (a)(1). "'Substantial evidence' is evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt."  *State v. Jones*, 125 Ariz. 417, 419 (1980).  We make no distinction between direct or circumstantial evidence.  *See State v. Jensen*, 106 Ariz. 421, 423 (1970).

¶18        A person commits money laundering in the second degree if he "[a]cquires or maintains an interest in, transacts, transfers, transports, receives or conceals the existence or nature of racketeering proceeds knowing or having reason to know that they are the proceeds of an offense."  A.R.S. § 13-2317(B)(1).  "Racketeering" is defined as any act that is chargeable under state or federal law and committed for pecuniary gain. *Id.* (F)(3)(c).  An "offense" is defined as conduct that is punishable by a term of imprisonment or a fine under state or federal law.  A.R.S. §§ 13-105(27), -2317(G)(1).

¶19 The evidence presented at trial showed that Barfield assisted in managing the club, he and his codefendants used the club to operate a house of prostitution, and his codefendant Cary placed money in his prison account from club profits. The State presented sufficient evidence to support Barfield's conviction for money laundering. The superior court did not err in denying the motion for judgment of acquittal.

III. State's Closing Argument

¶20 Barfield argues the superior court erred when it allowed the State to play recordings of testimony from the court's recording system, known as "For the Record" ("FTR"), in its closing argument. Barfield contends that the State's ability to "cherry pick" FTR recordings placed undue influence on particularly incriminating testimony and he could not present his own "competing montage" in closing argument.

¶21 Because Barfield objected to the State's closing argument at trial, we review the superior court's trial rulings for an abuse of discretion. *See State v. Davis*, 226 Ariz. 97, 104, ¶ 11 (App. 2010). "A trial court has broad discretion to limit the . . . scope of closing arguments." *Id.* at 105, ¶ 18.

¶22 One week before the close of testimony, the State emailed all parties a copy of the PowerPoint presentation it planned to use in closing argument. The emailed copy contained icons "that indicated that sound would be played." At the close of testimony, Barfield objected to the State's use of FTR recordings embedded in the PowerPoint presentation, arguing he did not have instant access to the same recordings and it left him at a "substantial" and "tactical disadvantage." The State argued Barfield could have ordered his own recordings, the recordings at issue were only two minutes in length, and playing the recordings was akin to citing to testimony during closing argument. Overruling the objection, the superior court stated that the State gave notice that recordings of some kind would be used in its closing argument and Barfield had enough time to order his own recordings.[3] During closing argument, the State played a total of four

---

[3] The court stated that it would have taken Barfield "24 hours at most" to order and receive FTR recordings.

short FTR recordings.[4]  The court instructed the jury that statements made by counsel in closing argument were not evidence.

**¶23**　　　　In criminal cases, counsel is given "wide latitude" in closing argument, *State v. Comer*, 165 Ariz. 413, 426 (1990), and may "comment on the evidence and argue all reasonable inferences therefrom." *State v. McDaniel*, 136 Ariz. 188, 197 (1983).  Similarly, counsel's use of a demonstration is permissible if it is used to explain admitted evidence and its probative value outweighs the danger of unfair prejudice. *See State v. King*, 226 Ariz. 253, 256, ¶ 7 (App. 2011); *cf. State v. Dann*, 220 Ariz. 351, 363, ¶¶ 49-50 (2009).  Moreover, the State is not required to provide a play-by-play description of every item it plans to use for demonstration purposes. *See State v. Patterson*, 230 Ariz. 270, 276, ¶¶ 22-24 (2012) (finding no abuse of discretion in allowing the prosecutor to use a PowerPoint presentation disclosed the day of closing argument).

**¶24**　　　　A week prior to closings, the State notified Barfield that it intended to use a PowerPoint presentation with audio recordings during its closing argument.  In the interim period before closing arguments, Barfield could have asked for assistance in opening the recordings in the State's PowerPoint and/or ordered his own FTR recordings.  Moreover, the recordings were only two minutes in length, and on appeal, Barfield does not describe the substance of any of the testimony they contained.  The record does not show that the State's use of FTR recordings as a tool for commenting on the evidence during closing argument caused Barfield unfair prejudice.  Thus, we find no abuse of discretion.

IV.　　Presentence Incarceration Credit

**¶25**　　　　Barfield contends that the superior court erred when it determined that, pursuant to A.R.S. § 13-711(B), he could not receive presentence incarceration credit for time he was incarcerated on his undischarged term of imprisonment in a prior case.

**¶26**　　　　A superior court's imposition of a statutorily permissible sentence will not be disturbed absent a clear abuse of discretion. *State v. Bojorquez*, 111 Ariz. 549, 557 (1975).

**¶27**　　　　When the State filed charges in this case, Barfield was serving a term of imprisonment in Maricopa County Superior Court cause number

---

[4]　　　　The State's PowerPoint presentation with the FTR recording was not included in the record on appeal.  However, it does not appear that the recordings specifically focused on Barfield.

CR2007-112319-001 ("2007 case"). After the State filed charges, Barfield was transported from the DOC to the county jail and release conditions were set. Over one year later, Barfield completed his term of imprisonment in the 2007 case and was released on bail. After the verdict, the superior court revoked Barfield's bail and ordered him into custody to await sentencing. Almost two months later, the court sentenced Barfield to 4.5 years' imprisonment with 82 days of presentence incarceration credit.[5] The court determined that Barfield was only entitled to credit for time spent in custody after his release date in the 2007 case. The court reasoned that A.R.S. § 13-711(B) applied, requiring the undischarged term of imprisonment in the 2007 case to run consecutively to the sentence in this case.

¶28 The State concedes that A.R.S. § 13-711(B) does not apply to the sentence in this case because Barfield already completed the term of imprisonment in the 2007 case before he was sentenced in this case. We agree. Thus, Barfield did not have an undischarged term of imprisonment and A.R.S. § 13-711(B) did not apply. We further agree with the State, however, that the superior court reached the proper outcome.

¶29 Pursuant to A.R.S. § 13-712(B), a defendant is entitled to credit for "[a]ll time actually spent in custody pursuant to an offense." We have held that a defendant who commits a new offense while serving a term of imprisonment in a prior case can only receive incarceration credit from the earliest release date in the prior case. *See, e.g.*, *State v. Verdugo*, 180 Ariz. 180, 186 (App. 1993); *State v. Bridgeforth*, 156 Ariz. 58, 59-60 (App. 1986); *State v. San Miguel*, 132 Ariz. 57, 60-61 (App. 1982).

¶30 Barfield was only entitled to credit for time spent in custody after his release date in the 2007 case. Although the superior court incorrectly applied A.R.S. § 13-711(B) to the sentence, it did not abuse its discretion in calculating Barfield's presentence incarceration credit.

---

[5] The court incorrectly added the day of sentencing to Barfield's presentence incarceration credit. "[W]e will not correct sentencing errors that benefit a defendant, in the context of his own appeal, absent a proper appeal or cross-appeal by the state." *State v. Kinslow*, 165 Ariz. 503, 507 (1990).

## CONCLUSION

¶31     For the foregoing reasons, we affirm the conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA