**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank Olmos CASTENADA, Defendant-Appellant.**

No. 76–1328.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1976.

Decided March 16, 1977.*

As Amended on Denial of Rehearing May 3, 1977.

---

* This appeal was originally decided by unreported order on March 16, 1977, pursuant to Rule 35. On consideration of the petition for rehearing, the panel subsequently decided to correct the order and issue the decision as an opinion. The petition for rehearing is denied.

Paul M. Caldwell, Jr., Benton, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Timothy Gifford, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before BAUER and WOOD, Circuit Judges, and GRANT, Senior District Judge.**

GRANT, Senior District Judge.

This appeal involves alleged errors in the criminal trial of Frank Olmos Castenada, an inmate at the United States Penitentiary at Marion, Illinois. Castenada was convicted of voluntary manslaughter on March 24, 1976. He was originally charged in a two-count indictment for (1) the murder of Donald Eugene Smith, and (2) the unlawful conveying of a knife in violation of 18 U.S.C. § 1792. The jury ultimately found him guilty on Count I of the lesser included offense of voluntary manslaughter. Castenada was cleared of the second charge when the court granted his motion for a judgment of acquittal as to Count II.

The killing occurred as the result of an apparent fight between the defendant and the decedent in the warehouse area of the prison on the morning of September 10, 1975. The defendant was discovered inflicting blows upon the decedent with a knife. The defendant was on top of the decedent who was lying face up trying to ward off the blows. The defendant was eventually subdued, but not until he had inflicted fatal wounds to the decedent. Testimony at trial indicated that thirty-one stab wounds (Tr. 97) had been inflicted upon Smith and that he died from stab wounds inflicted in the chest. (Tr. 100).

At trial, the defendant attempted to argue that he had acted in self-defense. Castenada testified that he had been upset by a September 8, 1975, phone call advising of his brother's death and, further, that he had had words with Smith in regard to a debt arising out of a bet. (Tr. 178). Testimony also tended to indicate that originally Smith had the knife and had pursued Castenada. The fight ensued, with Castenada stabbing Smith to death.

Prior to trial, counsel for the defendant moved for a Title 18 § 4244 mental examination of Castenada to determine whether or not he was competent to stand trial and, also, to determine whether or not he was sane at the time of the alleged crime. This motion was granted and the defendant was examined at the Springfield Medical Center for federal prisoners. On the basis of the report from Springfield, the defendant was declared competent to stand trial. (Tr. 2).

During the course of the trial, evidence was adduced as to the mental condition and history of the defendant. Dr. J. R. Plank, a doctor on the penitentiary staff who had pronounced Smith dead, testified that he had prescribed a tranquilizer, valium, for Castenada because of the defendant's anxiety. In rebuttal, the Government called Dr. Daniel Brooks, the psychiatrist from the Springfield Medical Center for prisoners, who had examined Castenada after the homicide and pronounced him competent to stand trial. Dr. Brooks opined that an earlier 1967 diagnosis indicating Castenada was suffering from schizophrenia was inaccurate and that Castenada had not and did not suffer from any mental disease. Brooks also testified that Castenada had, during the examination, described the homicide incident "in sufficient detail" and that he "almost acted it out". (Tr. 208).

The defense alleges in a brief a number of errors at trial. They can be categorized into four major areas: (1) evidence of guilt, (2) prejudicial conduct by the Government, (3) proof of sanity, and (4) errors by the trial court. For the reasons that follow, however, we do not believe that any of these claims are of such a nature as to require a reversal of the conviction.

** Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

## SUFFICIENCY OF EVIDENCE OF GUILT—

Counsel for the defendant insists that there was not sufficient evidence to find Castenada guilty of voluntary manslaughter. Specifically, he reasons that any finding by the jury that the defendant acted with greater force than necessary was against the manifest weight of the evidence. Counsel points out that the decedent initially pursued the defendant, that the decedent had made threats against the defendant, and that the incident occurred within the confined and often rugged environment of the penitentiary.

■ In cases where, as here, a question is raised as to the sufficiency of evidence to support a criminal jury verdict, "the verdict must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it". *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Abrams*, 476 F.2d 1067, 1071 (C.A. 7 1973). It is for the jury, not the Court of Appeals, to determine the credibility of witnesses and to weigh their evidence. Our only inquiry here is to determine whether there is substantial evidence.

■ The record contains evidence that Castenada inflicted thirty-one stab wounds upon Smith and that he was on top of Smith in possession of the knife at the time that the fight was broken up. Under these circumstances, we believe that there is substantial evidence in the record upon which a jury could reasonably conclude that Castenada had exceeded the bounds of any reasonable self-defense and had become the aggressor. Hence, we find that there was sufficient evidence to sustain a jury verdict of voluntary manslaughter.

## CONDUCT OF THE GOVERNMENT—

Defendant contends that statements of the defendant made to the government psychiatrist, Dr. Brooks, were improperly used against him in violation of 18 U.S.C. § 4244.

Section 4244 of Title 18 of the United States Code provides in part that:

No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.

During direct examination, Castenada testified as follows:

Q. You said you went to Springfield?

A. Yes.

Q. What was the purpose of your trip to Springfield?

A. They told me the Judge ordered it.

Q. Who did you see in Springfield?

A. About two or three psychiatrists.

Q. Did they talk to you about your background?

A. Yes, sir.

Q. Did they talk to you about this incident?

A. Yes, sir.

Q. And did you tell them anything about what happened?

A. Yes, sir.

Q. And did you tell them substantially what you told us here this morning?

A. Yes, sir.

Q. Mr. Castenada, do you remember stabbing Donald Eugene Smith?

A. No, sir.

Q. Are you denying that you stabbed him?

A. I don't understand you.

Q. I am asking you if you are denying that you stabbed him with a knife, you are not saying you didn't stab him are you?

A. No, sir.

Q. But you don't remember stabbing him at all?

A. No, sir.

Q. You testified you remember grabbing his writs and scuffling?

A. Yes, sir.

Q. And the next thing you remember was Mr. Ramsey?

A. Yes, sir. (Tr. 182, 183).

It was only on rebuttal that the Government called Dr. Brooks, one of the original examining psychiatrists, as a witness. Regarding the examination of Castenada, Dr. Brooks testified as follows:

Q. What procedures did you use in examining him?

A. I reviewed a great deal of records that we had already, records that came from Marion, I went over the note made about his behavior with regard to the institution, how he was behaving himself. I conducted a personal interview, then I reviewed the results of tests made by the psychiatrists and later on I attended a conference with another psychiatrist and psychologist, we examined the defendant together and made notes and reached a final decision.

Q. Did you say you personally examined him?

A. Yes, I did.

Q. Did you discuss the particular offense with which he had been charged?

A. Yes, we did.

Q. And without telling me what he said, did he describe that incident to you?

A. Yes, he did.

Q. Did he describe it to you in any detail?

A. Yes in sufficient detail, he actually almost acted it out with me.

Q. He didn't have any lapses of memory concerning it?

A. No, sir. (Tr. 208).

■ Several observations about Dr. Brooks' testimony should be made. First, his testimony about Castenada's statements during the examination was very limited and general. He did not testify as to what was in fact described, but merely that Castenada did describe the incident, that the description was in "sufficient detail" and that he "actually almost acted it out". His testimony is in contradiction to the defendant's, who stated at trial that he did not recall stabbing Smith. On the stand, Castenada had also told the jury that his discussion of the incident with the examining psychiatrist was "substantially what you told us here this morning". (Tr. 183).

Section 4244 provides that statements of the accused are inadmissible only "on the issue of guilt". In this case, the defendant opened the door on direct examination to the content of statements made during his examination. The testimony of Dr. Brooks was elicited in order to attack Castenada's credibility and as such it was proper impeachment. The testimony of Dr. Brooks was offered by the Government on the limited issue of credibility rather than on the issue of guilt—and thus did not violate the statute.

This distinction between precluding the admission of evidence on the issue of guilt in the case in chief and admitting otherwise inadmissible evidence for purposes of impeachment has been recognized by the Supreme Court on several occasions. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). In *Harris,* the defendant made statements to the police in violation of his rights as guaranteed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and was subsequently impeached on cross-examination by his earlier remarks. The Supreme Court held that statements inadmissible under *Miranda* for purposes of proving guilt could nevertheless be properly used to attack the credibility of the defendant if he took the stand. In *Oregon v. Hass* the defendant had been given his *Miranda* warnings and then later asked to speak to an attorney. After making his request to talk with counsel, he proceeded to make incriminating statements which were utilized by the prosecution to impeach him. The Supreme Court again concluded that the statements were admissible for purposes of impeachment.

In holding that Section 4244 does not bar the use of statements by the accused for purposes of impeachment we are construing the statute so as to protect the integrity of the fact-finding process. The privilege accorded a defendant in deciding whether or not he wishes to testify does not "include the right to commit perjury". *Harris, supra,* 401 U.S. at 225, 91 S.Ct. at 645. The limitation on admissibility we confront here differs from that in *Harris* in that it derives from statute rather than from the Constitution. Nevertheless, we believe that Congress did not intend that its statutory shield, like the exclusionary shield embodied in *Miranda,* should be "perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent utterances". *Id.* at 226, 91 S.Ct. at 646. Since Dr. Brooks' testimony was not used for the purpose contemplated by the statute, it constituted appropriate impeachment and we find no error.[1]

Having found that the testimony of Dr. Brooks was admissible, we find no error in the prosecutor's commenting on his testimony in closing argument. Dr. Brooks' testimony was evidence in the case and comment on it as regarding the defendant's credibility was not improper.

■ The defendant next contends that the Government committed prejudicial error in questioning the witness, George Harp, as to whether he has testified in court before, and implying in closing argument that another witness, Joseph Dougherty, had testified before. A review of the record leads us to conclude that both of these incidents, when viewed in isolation, may have constituted improper remarks. The question directed to Harp, however, was immediately followed by an objection that was sustained. An objection was also sustained and an instruction to disregard

given as regards to Government's remarks in closing argument about Dougherty. Under Rule 52(a) of the Federal Rules of Criminal Procedure, errors, defects and irregularities, are to be disregarded unless they "affect substantial rights". *See also* 28 U.S.C. § 2111. Viewing the record and trial in their totality, we cannot conclude that these irregularities had any likelihood of changing the result of the trial. The remarks do not approach the level of constitutional magnitude. The Supreme Court has emphasized the difference between the "ordinary trial error of a prosecutor" and "egregious conduct" amounting to a denial of due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1973).

■ Defendant further contends that the prosecution improperly dealt at length with the past criminal record of the defendant and his history of incarceration. It must again be noted that this line of questioning was again pursued without any objections or requests for a motion to strike. The duty to exclude objectionable data lies squarely upon the shoulders of defense counsel. If this court were to find error in this line of questioning, it would have to do so via the doctrine of "plain error". This doctrine will be applied only where a defendant has been unfairly prejudiced by inadvertent or ignorant mistakes of counsel and should not be invoked where failure to object may have been deliberate and in furtherance of legitimate trial tactics. *Marshall v. United States,* 409 F.2d 925, 927 (C.A. 9 1969). The doctrine is one that will be applied cautiously and only in exceptional cases. *Davis v. United States,* 425 F.2d 673, 674 (C.A. 9 1970).

■ Granting that criminal convictions are damaging and potentially inflammatory areas of examination, we do believe that

---

1. We should point out that the record of Dr. Brooks' direct testimony in rebuttal is barren of any objections by defense counsel. Rule 103(a) of the Federal Rules of Evidence places an affirmative duty on the party assigning error on the admission of evidence to make a timely objection or motion to strike. Although matters involving a statutory exclusionary principle such as is involved here might be cognizable under the doctrine of "plain error" in Rule 103(d) of the Federal Rules of Evidence and Rule 52(b) of the Federal Rules of Criminal Procedure, our finding that the admission of Dr. Brooks' testimony did not violate the statute makes any such consideration unnecessary.

this case involved an unusual situation in that both the defendant and decedent were incarcerated felons. Given that Castenada was in the penitentiary at the time of the incident, it could hardly have come as a surprise to the jury that Castenada had a criminal record. Furthermore, a number of the defendant's witnesses were inmates who had substantial and serious criminal records on which they were routinely impeached. By the time that the defendant took the stand, the jury could reasonably have anticipated that he had a criminal record of some sort. In light of this realization, it was not unusual for defense counsel to mitigate the impact of defendant's record by questioning him about it (Tr. 169, 170) on direct examination. Nor was it alarming when the Government further questioned him about his record on cross-examination. At this juncture, the Government was not only impeaching but also pursuing matters raised on direct. Although defense counsel might have curtailed the extent of questioning by the Government with timely objections, the record is clearly not one which mandates the application of "plain error". We do not find that the substantial rights of the defendant were affected.

The defendant also assigns error to the Government's cross-examination of the staff psychologist from Marion, Robert L. Carr, and the prosecutor's examination of witnesses and arguments to the jury with respect to defendant's alleged statements regarding "snitches". We have reviewed the record as to both of these matters and find no misconduct by the Government that could be elevated to the level of reversible error.

PROOF OF SANITY—

■■■ Defendant attacks the adequacy of the proof of sanity of the defendant. Specifically, he contends that the Government psychiatrist, Dr. Dan Brooks, did not conduct a thorough examination, that his testimony was in too conclusory terms, and his conclusion as to sanity runs against the manifest weight of all of the evidence. In

this regard, we again rely on *Hamling, supra,* and *Glasser, supra.* Taking the view most favorable to the Government, we believe that there is substantial evidence in the record for the jury to have concluded that Castenada was sane. Fact-finding is the province of the jury and as this court has emphasized on an earlier occasion, it will "not function as a super-fact-finding tribunal". *United States v. Owen,* 231 F.2d 831, 833 (C.A. 7 1956).

The defense had the opportunity to cross-examine Dr. Brooks and did so. The jury, however, concluded that the defendant was sane. We do not find anything in the record to justify disturbing that finding.

ERRORS BY THE TRIAL COURT—

The defendant suggests that the trial court committed reversible error in allowing the Government to argue psychiatric evidence, reinstructing the jury, and failing to require a special verdict as to sanity. With regard to the arguing of the psychiatric evidence, we have already stated that there was no error in the prosecutor's remarks.

Turning to the matter of reinstruction, the defendant stresses that there was error in the reinstruction because: (1) the court did not re-read all of the original instructions and (2) the court included new instructions in its re-reading (malice and malice aforethought).

■ As a general proposition, the necessity, extent, and character of the any supplemental instructions to the jury are matters within the discretion of the district court. *United States v. Braverman,* 522 F.2d 218, 224 (C.A. 7 1975); *United States v. Jackson,* 482 F.2d 1167, 1177 (C.A. 10 1973), *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). This court has held a judge may re-read portions of the original instructions upon request so long as the reinstruction does not mislead or confuse the jury. *United States v. Cleveland,* 477 F.2d 310, 315 (C.A. 7 1973).

■■■ In the instant case, the trial judge re-read some of the original instruc-

tions and also added two additional instructions. There is little question that a judge, in acceding to a jury request for reinstruction, may either supplement their request with more of the original instructions or re-read the entire charge itself. Such latitude is obviously necessary to insure that reinstruction does not occur in a misleading or confusing manner. With regard to the two additional instructions on malice and malice aforethought, we do not believe that the court exceeded its discretion in giving them. The Supreme Court has noted that "when a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy". *Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). The trial court, realizing that these definitions were pertinent and relevant to the application of the law in this case, included them in its reinstruction. Inasmuch as the reinstruction was legally accurate and not confusing or misleading as to amount to an abuse of discretion, we find no error.

■ Finally, defense counsel contends that the court erred in not submitting to the jury a special verdict on the question of the defendant's sanity. There is some question as to whether such a request was ever tendered. The defense concedes that they are unable to explain why the transcript of proceedings dealing with the conference on instructions does not set forth the conversation. Even if such a request were made, although unrecorded, we believe that such a matter would rest in the sound discretion of the trial court. In the absence of any abuse of discretion, we find no error.

For the reasons discussed above, the judgment of the district court should be and is hereby Affirmed.