**STATE of Iowa, Plaintiff–Appellee,**

v.

**Stephen Lee TRYON,
Defendant–Appellant.**

**No. 87–1089.**

Court of Appeals of Iowa.

Aug. 24, 1988.

Alfredo G. Parrish of Parrish & Kruidenier, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., Mike L. Zenor, Clay County Atty., and Patrick M. Carr, Asst. County Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

This is an appeal from defendant Stephen Lee Tryon's conviction, following a jury trial, of first-degree kidnapping in violation of Iowa Code section 710.1 and 710.2. On appeal, defendant contends 1) the evidence was insufficient to establish the crime of kidnapping; that at the most, the confinement of the victim was merely incidental to the commission of sexual abuse; 2) the trial court erred in allowing the testimony of the court-appointed psychiatrist; and 3) that he did not receive a fair and impartial trial because he was denied effective assistance of counsel.

### Background

From substantial evidence in the record, the jury could find the facts which we set forth. Because "confinement or removal" is a significant issue, detailed facts are necessary.

The victim and her husband were involved in divorce proceedings. During the evening in question, she went to a bar with friends. There she met the defendant, a friend of her husband.

The victim and the defendant talked, danced, and drank beer. At a time between 1:30 and 2:00 a.m., the defendant suggested that they go to her apartment. They did so in her car with the defendant driving. The defendant took a six-pack of beer with him.

At the apartment the two sat in the living room, watched television, kissed, and

touched. The defendant made certain sexual advances and the victim told him that she did not want to for he (defendant) was a friend of her husband. The defendant did not object and said that was fine.

The victim then asked the defendant if he was going to stay all night. He said that he was. The victim then went to her bedroom, obtained her alarm clock and a blanket, and returned to the living room. She lay down on the floor and fell into a heavy sleep. The defendant lay down on the floor next to her.

The victim's next recollection was waking on the living room floor with the defendant kneeling between her legs shaving her pubic hair with a razor blade. After falling back asleep, the victim awoke to find herself naked in her bed with her hands tightly bound by a cord which was strung below the bed. The defendant was at that time completing the shaving of her pubic hair. When the victim protested, the defendant replied that if she didn't sit still he would cut her.

After finishing shaving the victim, the defendant left the bedroom; the victim struggled unsuccessfully to free herself while he was out of the room; the defendant returned with speaker wire from the living room and attempted, without success, to tie the victim's legs. The victim screamed and struggled. The defendant responded by grabbing a pillow and trying to smother her; when this did not stop her screaming, the defendant struck her with a hard blow. She may have temporarily lost consciousness.

When the victim awoke, the defendant was holding ice on her nipple. He pierced her nipple with a safety pin; she protested and the defendant threatened to kill her if she did not shut up. To reinforce his threat, the defendant showed the victim a knife he had obtained from her kitchen and jabbed her between her breasts, breaking the skin.

During the hours which followed, the defendant frequently threatened the victim with this knife, holding it to her face and neck and stabbing it into the mattress several times. The defendant continued his abuse by applying ice to her clitoris and threatening to pierce it as well. The victim could see what the defendant was doing. To prevent her from watching, the defendant ripped a towel and used pieces of it in an attempt to blindfold and gag her. Up to this time the defendant did not have sex with her.

The defendant next penetrated the victim's vagina with a beer bottle, a sharp object—possibly an ink pen, and the handle of a knife. He next removed his clothing and forced the victim to perform oral sex; after achieving an erection the defendant had vaginal intercourse with her. The defendant repeated this pattern of forced oral sex followed by intercourse four or five times. The defendant was not able to get either the blindfold or gag tightly secured and they slipped down around the victim's neck, allowing her to witness most of the defendant's actions.

Finally the defendant stopped his abuse, got dressed, and told the victim he would have to kill her for she was a witness. The victim promised that she would not report his actions to the police and eventually convinced him to untie her. The defendant then gave her the knife and asked her to kill him.

The victim threw the knife across the room and continued to talk to the defendant, calling in sick to her place of employment in an attempt to make him believe that she would not report the incident. The defendant left the victim's apartment at approximately 7:30 or 7:45 a.m. She then called the police.

## I.

■ Defendant first contends the evidence was insufficient to establish the crime of kidnapping, and that, at the most, the confinement of the victim was merely incidental to the commission of sexual abuse.

Iowa Code section 710.1 states:

A person commits kidnapping when he or she confines a person or removes a person from one place to another, knowing that he or she has neither the authority

nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:

\* \* \* \* \* \*

3) the intent to inflict serious injury upon such person, or to subject the person to a sexual abuse....

Iowa Code section 710.2 states:

Kidnapping is kidnapping in the first degree when the person kidnapped, as a consequence of the kidnapping, suffers injury or is intentionally subjected to torture or sexual abuse. Iowa Code § 710.2 (1987).

Our supreme court has held the terms "confines" or "removes" require more than the confinement or removal that is an inherent incident of the commission of the crime of sexual abuse. *State v. Misner*, 410 N.W.2d 216, 222 (Iowa 1987). The standards by which a jury could determine whether the evidence demonstrated a confinement or removal sufficient to support a charge of kidnapping provide:

1. No minimum period of confinement or distance of removal is required for conviction of kidnapping.

2. The period of confinement or distance of removal must exceed what is normally incidental to the commission of sexual abuse.

3. The confinement or removal must have significance independent from the act of sexual abuse itself in one of the following ways:

a. Substantially increase the risk of harm to the victim.

b. Significantly lessen the risk of detection.

c. Significantly facilitate escape following the consummation of the sex abuse offense.

*Id., (citing State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981)).

Defendant argues that the confinement herein was, at most, incidental to the sexual abuse. He argues that binding the victim neither increased the risk of harm to her, significantly lessened risk of detection, nor significantly facilitated his escape after completion of the sex act. This ignores the vast majority of evidence presented at the trial.

The jury, based upon the evidence presented, could reasonably have found that defendant's binding and threatening the victim (both constituting forms of confinement), not only facilitated the prolonged sexual abuse which occurred, but also that it had significance independent of the sexual abuse, substantially increased the risk of harm to the victim, significantly lessened the risk of detection for the defendant, and significantly facilitated defendant's escape. This case is distinguished from defendant's cited cases of *State v. Mead*, 318 N.W.2d 440 (Iowa 1982), and *State v. Marr*, 316 N.W.2d 176 (Iowa 1982), where the victims were merely confined to an extent necessary for the completion of the sex act.

The evidence here shows that defendant confined the victim to her bed by putting her on her back, tightly binding her hands with a cord strung below the bed, and stretching her arms to the side, thereby preventing her from protecting herself by warding off or escaping from defendant's attack. This position was maintained for a significant period of time while defendant moved freely about the apartment, obtained a knife from her kitchen, threatened the victim, and performed various acts of sexual and physical abuse. The risk to the victim was definitely far greater than in a "normal" sexual abuse scenario.

When the victim began to struggle, scream, and fight against defendant, he repeatedly threatened her life with a knife, struck her, and gagged her. The victim temporarily lost consciousness. These actions were obviously designed to, and did, significantly reduce the risk of detection. The victim testified it was defendant's use of the knife and repeated threats toward her life which convinced her to stop struggling and screaming.

Also, defendant's binding and threatening of the victim significantly facilitated his perceived ability to escape following his attack. Although the victim was able to ultimately persuade defendant to untie her,

she continued to fear for her life. She did not flee from her apartment due to this fear. The fact that the victim was adroitly able. to abort defendant's scheme does not alter the underlying nature of the confinement. *State v. Coen*, 382 N.W.2d 703, 713 (Iowa App.1985). It would not have been unreasonable for the jury to assume that, if the victim had not been successful in her attempt to convince defendant that she would not report his actions, defendant would have carried out his threat to kill her because she was a witness.

This court has repeatedly upheld kidnapping convictions where the victim ultimately escaped the defendant's confinement. *See State v. Coen*, 382 N.W.2d at 708–13; *State v. Hardin*, 359 N.W.2d 185, 189–90 (Iowa 1984); *State v. Ristau*, 340 N.W.2d 273, 274–76 (Iowa 1983); and *State v. Knupp*, 310 N.W.2d 179, 181–83 (Iowa 1981).

The standard of review to be applied relative to sufficiency of the evidence is to:

[On a finding of guilt, we] view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record.... A jury verdict is binding upon this court and will be upheld unless the record lacks substantial evidence to support the charge. Substantial evidence means evidence which would convince a rational trier of fact that the defendant [is] guilty of the crime charged beyond a reasonable doubt.

*State v. Blair*, 347 N.W.2d 416, 418–19 (Iowa 1984).

The State clearly presented ample evidence to generate a jury question on the issue of confinement. The district court properly overruled defendant's motions for judgment of acquittal, and it properly submitted a kidnapping instruction to the jury.

## II.

Defendant next argues the court erred in admitting the testimony of Dr. Chandler, because it is protected by the physician-patient privilege under Iowa Code section 622.10, which provides:

A practicing attorney, counselor, physician, surgeon ... who obtains information by reason of [his] employment ... shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to [him] in [his] professional capacity, and necessary and proper to enable [him] to discharge the functions of [his] office according to the usual course of practice or discipline.

In order to find the existence of a physician-patient privilege under Iowa Code section 622.10 (1987), the following elements must be established:

1) the relationship of doctor-patient;

2) acquisition of the information or knowledge during this relationship; and

3) the necessity of the information to enable the doctor to treat the patient skillfully.

*State v. Cole*, 295 N.W.2d 29, 32 (Iowa 1980).

In court-ordered evaluations, the third requirement of the privilege is lacking; the communication is not for the purpose of treatment but to determine the existence of a fact or condition for the benefit of the court. Therefore, "[t]he physician-patient privilege does not arise where on order of the court a defendant is examined to determine his mental or physical condition."

*Id.* at 33.

Dr. Chandler, under court order, examined defendant for the purpose of determining his mental competency to stand trial and assist in his own defense and his mental state at the time of the alleged offenses. There was no request made for treatment.

Dr. Chandler testified that his relationship with defendant was as a physician and patient and that he specifically told defendant that what was discussed was confidential and protected. The trial court allowed the testimony based on *State v. Cole*, 295 N.W.2d 29 (Iowa 1980), where the court held defendant could not assert the doctor-patient privilege with respect to court-ordered evaluations because the communications were not for treatment, but rather for

the purpose of determining the existence of a fact or condition for benefit of the trial court.

Defendant tries to distinguish . *Cole,* where the court requested the evaluation for the court's benefit, from the case herein, where defendant requested the evaluation to assist him in his own defense.

The fact that defendant requested the evaluation does not impose the privilege, but rather does not allow for it to arise. *State v. Nowlin,* 244 N.W.2d 596, 602–03 (Iowa 1976). Neither a belief on the physician's part that a confidential relationship exists, nor the defendant's intent or expectations in obtaining the order for commitment and submitting to the ensuing examination alter the fact that the order herein provided solely for evaluation and not for treatment. *Cole,* 295 N.W.2d at 34–35.

No physician-patient privilege existed in this case. The trial court was correct in allowing the State to present rebuttal testimony from Dr. Chandler to impeach defendant.

■ Defendant next argues Dr. Chandler's testimony is protected by the attorney-client privilege, which was first raised in defendant's second motion for new trial. This is not a timely objection.

Our supreme court has consistently held that "objections should be raised at the earliest time at which error became apparent in order to properly preserve error." *State v. Steltzer,* 288 N.W.2d 557, 559 (Iowa 1980). "Ordinarily an objection first made in a motion for new trial is untimely and does not preserve error." *State v. Ryder,* 315 N.W.2d 786, 789 (Iowa 1982); *State v. Windsor,* 316 N.W.2d 684, 688 (Iowa 1982); *State v. Steltzer,* 288 N.W.2d 557, 559 (Iowa 1980). Iowa does not recognize a "plain error" rule; therefore, even alleged errors of constitutional magnitude must be preserved by timely objection. *State v. Miles,* 344 N.W.2d 231, 233 (Iowa 1984).

In *United States v. Alvarez,* 519 F.2d 1036 (3rd Cir.1975), the court held communications not for the purpose of diagnosis or treatment are not protected under the psychiatrist-patient privilege; however, that psychiatric consultations made in preparation for trial are protected by the attorney-client privilege. In *State v. Craney,* 347 N.W.2d 668 (Iowa 1984), the supreme court reviewed *Alvarez* and expressly rejected a "constitutionalized attorney-client privilege for a defendant's communications to a mental expert" *Id.* at 677–78. This court continues to hold that position.

■ Defendant next argues the psychiatrist's testimony should have been excluded because he testified to inconsistencies defendant allegedly stated and that defendant had not voluntarily waived his *Miranda* rights. Defendant testified the victim willingly had intercourse with him, both in the living room and the bedroom, and that the victim did not object to being tied up. Defendant also testified he did not remember blindfolding the victim, piercing her nipple, or her struggling against him. Defendant further denied threatening the victim and testified he had given the psychiatrist the same set of facts which he had given at trial and denied telling him the victim had passed out, that she was unconscious when he carried her to the bedroom and tied her, that she screamed when she awoke and he beat her, or that he pierced her nipple. Dr. Chandler testified as a rebuttal witness for the State and stated that defendant had told him the victim passed out, that he tied her, held a knife to her and told her what to do, that he hit her when she refused, that she screamed, that he pierced her nipple, gagged her, and held the knife over her most of the evening.

The court in *State v. Craney,* 347 N.W.2d at 668, 674 (Iowa 1984), recognized that it would be fundamentally unfair to allow the State to use defendant's incriminating admission to a psychiatrist during a psychiatric examination as part of its case to establish his guilt. But the State did not use Dr. Chandler in its case-in-chief, but rather as a rebuttal witness after defendant testified to his inability to remember many of the events alleged by the victim. The testimony was specifically limited to inquiry regarding whether defendant's pri-

or statements to the doctor were consistent with his trial testimony.

Statements obtained in violation of *Miranda* are inadmissible for the purpose of proving guilt; however, they may be used to attack the defendant's credibility if he testifies. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *State v. Hatter*, 381 N.W.2d 370, 372–74 (Iowa App.1985); *State v. Donelson*, 302 N.W.2d 125, 131–34 (Iowa 1981). Both the seventh and fifth circuits have held a psychiatrist's testimony is admissible regarding defendant's admissions for impeachment. *United States v. Castenada*, 555 F.2d 605, 608–10 (7th Cir.1977), *cert. denied*, 434 U.S. 847, 98 S.Ct. 152, 54 L.Ed.2d 113 (1977); *Felde v. Blackburn*, 795 F.2d 400, 404 (5th Cir.1986), *cert. denied sub nom, Felde v. Butler*, — U.S. ——, 108 S.Ct. 210, 98 L.Ed.2d 161 (1987); *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

The psychiatrist's testimony did not violate due process nor defendant's right against self-incrimination.

Defendant asserts the State would not have been allowed to admit testimony from a private psychiatrist as opposed to the court-appointed psychiatrist herein. This is not the test used by the courts. The issue is the nature and purpose of the evaluation.

As stated in *State v. Nowlin:*

Three elements must exist for the physician-patient privilege to arise under § 622.10: (1) the relationship of doctor-patient; (2) information acquired during this relationship and (3) the necessity and propriety of the information to enable the doctor to treat the patient skillfully in his professional capacity. *These elements must exist for the privilege to apply whether the physician is a state employee or privately employed and whether the examination is by court order or arranged by the defendant privately.*

*State v. Nowlin*, 244 N.W.2d at 602 (citations omitted, emphasis added); *see also State v. Craney*, 347 N.W.2d at 671. Defendant sought psychiatric evaluation for determination of his competency to stand trial and mental state at the time of the alleged offense, not for medical treatment. The trial court correctly allowed the testimony of the psychiatrist by the State in an attempt to impeach defendant.

### III.

Defendant contends he was denied effective assistance of counsel because of his attorney's failure to properly object to jury instructions on kidnapping, failure to make a proper motion for directed verdict and/or dismissal either after the State rested or at the conclusion of all evidence, failure to state the kidnapping charge should be dismissed because the confinement was only incidental to sexual abuse, failure to be present and failure to properly protect defendant's interests at psychiatric examinations, failure to interview and/or subpoena key witnesses suggested by defendant, failure to have defendant present at the deposition of the alleged victim, failure to properly prepare for trial, and failure to request transcription of the voir dire, opening arguments, or closing arguments.

The standard of review for assessing ineffectiveness claims is that the court must make "an independent evaluation of the totality of the relevant circumstances; this is the equivalent of a *de novo* review." *Taylor v. State*, 352 N.W.2d 683, 684 (Iowa 1984). Defendant must overcome a presumption that counsel is competent. *Strickland v. Washington*, 466 U.S. 668, 688–90, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674, 693–94 (1984); *Taylor v. State*, 352 N.W.2d at 685.

If the defendant can show that counsel failed to perform an essential duty, he then must establish that actual prejudice resulted.

The defendant shows that he was prejudiced by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2069, 80 L.Ed.2d at 698.

Our supreme court has held if there is ample evidence on the submitted issue it will excuse counsel's actions even if he failed to move for judgment of acquittal. *Mills v. State*, 383 N.W.2d 574, 578 (Iowa 1986); *Schertz v. State*, 380 N.W.2d 404, 408–09 (Iowa 1985).

Trial counsel made a general argument for judgment of acquittal at the close of the State's evidence and at the close of the trial. The judge specifically indicated he had considered the sufficiency of the confinement evidence and it would support a jury finding of confinement as required under the kidnapping elements.

The record shows counsel discussed the purpose of the psychiatric evaluation with defendant and both agreed evaluation of defendant's competency and mental state at the time of the offense would be beneficial to possible defenses. Counsel told defendant to be honest with the psychiatrist, and counsel reviewed the evaluations with defendant. Counsel informed defendant the State could have the doctor testify for impeachment purposes if defendant testified at trial.

Defendant's claim regarding potential witnesses is unsupported and is mere speculation. Accordingly, it must fail. The state's potential witnesses would only have testified to defendant's intoxication, which was not a defense used at trial.

Defendant has not shown the testimony of the potential witnesses would have been beneficial, as required by *Nims v. State*, 401 N.W.2d 231, 235 (Iowa App.1986). Defendant has failed to prove prejudice because the probable effect upon the outcome of the trial cannot be shown.

■ Defendant's assertion regarding his absence at the victim's deposition was not included in defendant's posttrial motions nor argued before the court. Defendant has waived this claim and it will not be addressed by this court. Defendant argues trial counsel did not use a diminished capacity defense due to counsel's ignorance of the law or facts. The record indicates this is not the fact, but rather counsel felt the jury would view arguing both diminished capacity and consent defense as inconsistent, and that the intoxication argument would cloud the consent argument. Defendant agreed with this approach, until after his unsuccessful trial.

The supreme court has repeatedly not found ineffectiveness of counsel based upon a trial counsel's strategic decisions. *Pettes v. State*, 418 N.W.2d 53, 56 (Iowa 1988); *Schrier v. State*, 347 N.W.2d 657, 661–63 (Iowa 1984); *State v. Wilkens*, 346 N.W.2d 16, 18–20 (Iowa 1984).

Based on defendant's consistent statements the victim consented to his acts, inconclusive contents of psychiatric reports, and counsel's decision to avoid inconsistent defenses, counsel's decision not to assert a diminished capacity defense was well within the range of normal competency.

Defendant's claim of failure to transcribe voir dire and opening and closing arguments was not asserted before the trial court in posttrial motions. It has been waived. In either event, the defendant has failed to show that he was prejudiced.

Claims of ineffectiveness of counsel must be premised on more than simply questionable or unsuccessful trial tactics. The court has considered all of the above arguments and concludes defendant has not met his burden of establishing omission of an essential duty nor resulting prejudice relative to any of the asserted claims. This court finds trial counsel's conduct did not undermine the proper functioning of the adversarial process so that the trial could not have been relied on as having produced a just result.

We find sufficient evidence to prove defendant's guilt beyond a reasonable doubt. Defendant's conviction is affirmed.

AFFIRMED.

SACKETT, J., takes no part.