**Daniel W. SNETHEN, Appellant,**

v.

**Crispus NIX, Appellee.**

**No. 88–2041.**

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1989.

Decided Sept. 15, 1989.

James P. Cleary, Phoenix, Ariz., for appellant.

Thomas D. McGrane, Des Moines, Iowa, for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

In 1975, an Iowa district court jury convicted petitioner Daniel W. Snethen of first degree murder. The court sentenced Snethen to life in prison without parole. He later appealed to the Supreme Court of Iowa, sought state post-conviction relief, and petitioned the federal district court[1] for habeas corpus relief, but his conviction was upheld at each level. On appeal, Snethen argues that his detention violates his federal constitutional rights because:

(1) the trial court erred in permitting his examining psychiatrist to testify against him;

(2) the trial court erred in admitting testimony concerning inculpatory statements he made while in custody because he had requested counsel before making them; and

(3) the state failed to produce sufficient evidence that he was sane at the time of the murder.

Finding no violation of Snethen's constitutional rights, we affirm the district court's denial of his habeas petition.[2]

### I.

In September 1974, Daniel Snethen was in jail in Polk County, Iowa, serving time for a felony charge unrelated to the murder giving rise to this action. One month later, police questioned Snethen's half-brother, Luke Foster, concerning the August 1974 murder of Timothy Hawbaker.[3] When Snethen's mother learned that her sons were suspects in a homicide investigation, she came to the Lucas building, where Luke Foster was being questioned, and told police that "[i]f Danny did this, he will tell me."

---

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

2. We note that Snethen was before this court five years ago. Since his habeas petition contained unexhausted claims, Snethen was directed to return to state court to exhaust all available state remedies. *Snethen v. Nix,* 736 F.2d 1241 (8th Cir.1984). Having completed exhaustion, Snethen has returned to federal court.

3. The Iowa Supreme Court wrote that:
     The murder charge arose from the brutal slaying of Timothy Hawbaker in Polk County on August 31, 1974. The State alleged [Snethen] killed Hawbaker late that night near a levee south of Des Moines by choking him and beating him with a bumper jack.
     Viewed in the light most favorable to the verdict, the evidence showed [Snethen] met Hawbaker in downtown Des Moines during the evening involved when an automobile driven by [Snethen] was in a minor accident with an automobile driven by Hawbaker. [Snethen] was driving a car owned by his halfbrother, Glenn "Luke" Foster, who was a passenger in the vehicle. Hawbaker asked Luke not to report the accident. He offered Luke and [Snethen] a ride in his car, and they accepted. After riding around for about an hour, the trio ended up near a levee south of Des Moines, close to the site of an Iowa Power and Light Company building. [Snethen] and Hawbaker had been arguing. The three men left the car, and [Snethen] and Hawbaker began to scuffle with each other. Luke left the scene on foot because he did not wish to be involved. [Snethen] choked Hawbaker, struck him on the head several times with a bumper jack, and stabbed him numerous times in the chest. The blows from the bumper jack caused Hawbaker's death. [Snethen] dragged Hawbaker's body into a nearby cornfield, took his wristwatch, and left the body there. [Snethen] burned the Hawbaker automobile near the scene of the homicide.
*State v. Snethen,* 245 N.W.2d 308, 309–10 (Iowa 1976).

Police brought Snethen to the Lucas building one hour after his mother arrived there. When he was informed of his *Miranda* rights, he declined to speak without an attorney present. The police then decided to take Snethen back to jail, but his mother asked to speak with him before he was taken away. After their conversation, Snethen's mother invited the police to join them, and Snethen made a series of remarks (which were recorded in shorthand by one of the officers, *see infra*) inculpating him in the murder of Timothy Hawbaker. Snethen also reiterated that he did not wish to continue speaking without counsel present. Nevertheless, Snethen signed a statement admitting his involvement in the Hawbaker homicide. The content of Snethen's inculpatory remarks (as recorded in the officer's shorthand) was as follows:

I am involved in this and my brother wasn't and I request an attorney with me throughout.

As far as my brother involved, no. I will tell all details with my attorney with me.

My brother not involved, he left. I was fighting. He left and I was fighting and no [sic] knew what had gone on. He wasn't there at the time the action took place. I am not cutting a brother loose, he left I picked him up later and took back to his car. He walked down the road and took off, he was not involved in anything. He didn't know anything happened. He knew nothing about it.

He did not have anything to do with this. I will say I am a guilty suspect in the case, but I can't admit to any murder or anything. He did not do anything. He left, I got him back and later on took the car and knew something had happened to it.

I will talk through and with an attorney. I am no animal. I have crabs and they won't call a doctor and the whole darn cell has [crabs] and they gave us some medicine to wash with.

I will discuss from the beginning to the end when my attorney is with me.

I will state one thing, there is another suspect involved, but my brother don't know who it is. I took the knife for self protection.

The whole thing was an accident. I didn't mean to happen, it was pure accident.

After [it] happened I threatened Luke if it got out he would have to be done away with. I played on his mind.

*State v. Snethen*, 245 N.W.2d 308, 312 (Iowa 1976).

After Snethen's indictment for first degree murder, his attorney requested a psychiatric exam to determine whether Snethen was competent to stand trial and whether he had been sane at the time of the alleged murder. Dr. Paul Loeffelholz evaluated Snethen. After the evaluation, Snethen was ruled incompetent in a competency trial and sent to a psychiatric facility for treatment. Dr. Loeffelholz later certified that Snethen had regained competence to stand trial. A jury agreed in a second competency trial, so the date for Snethen's criminal trial was set.

At a suppression hearing prior to his trial, Snethen challenged the admissibility of the inculpatory statements he made in the Lucas building. The court agreed to suppress the written confession, but refused to suppress the shorthand notes recorded by the officer.

During his trial, Snethen relied on the insanity defense. He called a medical expert to testify that Snethen had paranoid/schizophrenic tendencies that may have limited his capacity to understand his actions, but that testimony was contradicted by Dr. Loeffelholz, who concluded that Snethen did have the capacity at the time of the alleged murder to distinguish right from wrong. Dr. Loeffelholz also testified that during his initial evaluation, Snethen made a number of inculpatory statements. Snethen did not object to this testimony. The jury found Snethen guilty of first degree murder and the court sentenced him to life without parole. The conviction and sentence were upheld on direct appeal. *State v. Snethen*, 245 N.W.2d 308 (Iowa 1976). Snethen was later denied state postconviction relief, *Snethen v. State*, 308 N.W.2d 11 (Iowa 1981), and federal habeas

relief, *Snethen v. Nix,* Civil No. 87–279–B (June 6, 1988).

## II.

█ Snethen's first argument on appeal is that the district court should have granted his habeas petition because the trial court's admission of Dr. Loeffelholz' testimony concerning inculpatory statements Snethen made during his pretrial psychiatric evaluation violated his rights under the fifth, sixth and fourteenth amendments of the United States Constitution. We do not believe that the admission of that testimony entitles Snethen to habeas relief. We express no opinion concerning the merits of this contention because it is procedurally barred. Snethen failed to raise the issue of Dr. Loeffelholz' testimony when he sought postconviction relief.[4] As the district court indicated in its denial of Snethen's petition, Snethen could have overcome the procedural default for federal habeas relief if he demonstrated cause for its occurrence and "actual prejudice" engendered by it, *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), but he made no such demonstration. Consequently, this issue is procedurally barred.[5]

## III.

Second, Snethen contends that he is entitled to habeas relief because the admission of the inculpatory statements he made to the police in the Lucas building violated his rights under the fifth and fourteenth amendments. We disagree. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the fifth amendment right to counsel attaches when an individual is subjected to custodial interrogation.

*Id.* at 477–78, 86 S.Ct. at 1629. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any way." *Id.* at 444, 86 S.Ct. at 1612. Once the suspect indicates that he wishes to exercise his *Miranda* rights, police must cease questioning the suspect immediately unless, as the Court emphasized in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the suspect initiates further communication with the police.

Likewise, the Court held in *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), that if a suspect in custody requested counsel, courts must presume that any subsequent waiver of his rights was involuntary unless he initiated further contact with the police.

█ In light of these precedents, we cannot conclude that the district court erred in denying Snethen habeas relief based on his *Miranda* contentions. Snethen argues that (1) he did not initiate further communication with the police; (2) the police wished to obtain a confession from him even after he requested counsel; and (3) he made his confession in a "coercive situation." *See* Petitioner's Brief at 18. These contentions are not persuasive because we see no indication that the police questioned Snethen after his request for counsel or that they coerced him to speak.

The Iowa Supreme Court found that when Snethen insisted that he did not wish to speak without counsel present, the police decided to return Snethen to the county jail. At this point, Snethen's mother prodded Snethen, both in the presence of police and in a private discussion, to describe the Hawbaker killing to the police so his half-brother would not be punished unjustly. It

---

4. Snethen's trial and direct appeal took place before the United States Supreme Court decided *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We need not determine whether *Wainwright* applies retroactively to Snethen's failure to object in those proceedings because Snethen failed to object in his state post-conviction relief proceeding, which took place post-*Wainwright.*

5. We also note that in light of the overwhelming evidence of Snethen's guilt derived from other sources (most notably his confession in the Lucas building after his discussion with his mother), any error in admitting Dr. Loeffelholz' testimony concerning Snethen's inculpatory statements was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

was "coercion" by his mother that led to Snethen's inculpatory remarks, not by the police. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), emphasizes that inculpatory remarks encouraged by influences other than "coercive police activity" are not inadmissible. Connelly argued that the "voice of God" commanded him to confess. Snethen's command came from his mother. Since Snethen, like Connelly, failed to demonstrate *police* coercion, his contention that his "coerced" confession was secured in violation of the United States Constitution is unmeritorious. Without compelling influence, psychological ploys, or direct questioning by law enforcement officials, the Court wrote in *Connelly,* "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." *Id.* at 166, 107 S.Ct. at 521. In accordance with that doctrine, we conclude that the district court did not err in refusing to grant habeas relief to Snethen on the basis of his *Miranda* arguments.[6]

### IV.

◼ Finally, Snethen contends that the prosecution failed to produce sufficient evidence that he was sane at the time of the Hawbaker killing. He argues that this failure renders his conviction invalid under the fourteenth amendment. We do not believe that the district court erred in failing to grant Snethen habeas relief on the basis of this issue. A great deal of evidence was adduced during the trial to the effect that Snethen was sane at the time of the killing. Dr. Loeffelholz, who had many opportunities to observe and treat Snethen, testified

6. Finally, we note that well-established federal habeas precedent indicates that:
> [Q]uestions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases.

*Maggitt v. Wyrick,* 533 F.2d 383 (8th Cir.1976). *See also Williams v. Lockhart,* 736 F.2d 1264 (8th Cir.1984); *Riley v. Lockhart,* 726 F.2d 421 (8th Cir.1984).

Under the doctrine enunciated in the cases cited above, Snethen could not prevail on habe-

that at all relevant times Snethen knew the nature and quality of his actions. The testimony of Luke Foster concerning Snethen's attempts to cover up the crime contained a great deal of information that could persuade a jury that Snethen was sane at the time of the murder. We find no error in the district court's rejection of Snethen's insufficient evidence argument.

For the foregoing reasons, we affirm the district court's denial of Snethen's habeas corpus petition.

HEANEY, Senior Circuit Judge, concurring in Parts III and IV, dissenting from Part II.

The majority finds that we are procedurally barred from considering the constitutionality of Dr. Loeffelholz' testimony because Snethen failed to raise the issue in his original state post-conviction petition. Not only do I believe this issue was raised in state court, but I feel the admission of Dr. Loeffelholz' testimony clearly violated Snethen's privilege against self-incrimination, his right to due process and his right to a fair trial. Thus, I dissent from Part II of the majority's opinion.

First, Snethen did not receive a fair trial. As Snethen's defense at trial was insanity, he called a psychiatrist to testify to the issue of his mental condition at the time of the murder. In rebuttal, the state called Dr. Loeffelholz who testified that Snethen knew and understood the nature and quality of his actions on the date of the murder, September 1, 1974. Dr. Loeffelholz, however, did not confine his statements to his opinion regarding Snethen's mental condition. He stated:

as review by virtue of his evidentiary arguments concerning the admission of his confession in the Lucas building and Dr. Loeffelholz' testimony unless he established that their admission was so prejudicial that it undercut the "fundamental fairness" of his trial. *See Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941). Snethen has not made such a showing, so his arguments fail to overcome the considerable obstacles preventing habeas review of evidentiary matters.

Eventually [Snethen, his step-brother, Luke, and the victim] ended up in a rather deserted area and the patient * * * had apparently the need to urinate. Words were exchanged according to Mr. Snethen which led to anger. Now, the exact content of the words I do not have and the patient claims that his alleged victim began to choke him * * *.

The patient stated he responded by grabbing the neck of his assailant. At that point the patient recalls a persistent and violent struggle. Eventually he says his assailant went limp and at that point the patient realized his victim was probably dead. Rather than make an effort to revive him, he apparently made a decision to make certain his assailant was dead and that resulted in considerable physical abuse on his assailant.

The patient claims he choked his victim with a belt and stabbed him in the heart and hit him over the head with a jack handle. The patient ended up burning the victim's car in an effort to avoid apprehension.

Trial Transcript at 518. Not only did Dr. Loeffelholz relate inculpatory statements made to him during a court-ordered psychiatric examination, but he attributed to Snethen reasons for his actions. In no way did this testimony relate to Dr. Loeffelholz' medical opinion as to Snethen's sanity.

The admission of such inculpatory statements clearly violated constitutional law as it existed at the time of Snethen's trial. Under *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the fifth amendment privilege against self-incrimination prohibits the use of inculpatory statements made to a psychiatrist during a criminal trial unless the defendant has been appraised of his rights prior to the psychiatric exam and has knowingly waived those rights. While the Supreme Court rendered this opinion after Snethen was convicted, many circuit courts had dealt with this issue prior to 1981. *See United States v. Reifsteck*, 535 F.2d 1030, 1034 n. 1 (8th Cir.1976) (admission of inculpatory statements made to a psychiatrist during a court-ordered competency examination would raise serious self-incrimination ques-

tions); *United States v. Williams*, 456 F.2d 217, 218–19 (5th Cir.1972) (per curiam) (no inculpatory statements of a defendant made to a psychiatrist are admissible in evidence); *United States v. Bohle*, 445 F.2d 54, 66–67 (7th Cir.1971) (it is impermissible to introduce into evidence on the issue of guilt any statement made by the defendant during the course of a psychiatric examination); *United States ex rel. Smith v. Yeager*, 336 F.Supp. 1287, 1304–05 (D.N.J.1971), *aff'd*, 451 F.2d 164 (3d Cir.), *cert. denied*, 404 U.S. 859, 92 S.Ct. 112, 30 L.Ed.2d 101 (1971) (inculpatory statements made to psychiatrist are inadmissible as substantive evidence of guilt). Furthermore, in *State v. Collins*, 236 N.W.2d 376 (Iowa 1975), the Iowa Supreme Court addressed the issue of whether the use of testimony of a psychiatrist obtained without *Miranda* warnings violated a defendant's fourteenth amendment right to a fair trial. Thus, under established precedent existing at the time of Snethen's trial, the admission of Dr. Loeffelholz' testimony was objectionable on constitutional grounds.

I believe that allowing a psychiatrist to relate to a jury statements made by a defendant in the course of an examination, even if admitted to rebut the defendant's own testimony, violates his due process rights. In *Collins v. Auger*, 577 F.2d 1107, 1109–10 (8th Cir.1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979), this Court held that the admission of inculpatory statements made to a psychiatrist during an examination violated a defendant's due process rights because a defendant should not be compelled to choose between his fifth amendment right not to incriminate himself and his due process right to investigate available defenses. As we stated:

[I]t is fundamentally unfair to use defendant's incriminating admissions to a psychiatrist during a psychiatric examination as part of the prosecution's case to establish his guilt. . . .

The defendant is entitled to raise his mental condition at the time of the offense as a defense. He is also entitled,

under proper circumstances, to an examination to determine his competency to stand trial. Psychiatric examinations are essential to the proof of his mental condition. An indigent must seek a court-order authorizing the examination and the payment of its costs. If the giving of a *Miranda* warning satisfied requirements of the Fifth Amendment and the Fourteenth Amendment and made the defendant's incriminating admissions admissible, the defendant would be placed in a situation where he must sacrifice one constitutional right to claim another.

If a defendant cooperated with the psychiatrist and made a full disclosure of his thinking processes and his background, including incriminating statements and if he failed to establish his lack of mental capacity, he would be faced with these admissions on trial. If a defendant exercised his right to remain silent and refused to cooperate with the psychiatrist the likelihood of a meaningful and reliable examination would be considerable decreased and his opportunity to urge a possible defense thwarted. A defendant should not be compelled to choose between exercising his Fifth Amendment right not to incriminate himself and his due process right to seek out available defenses.

*Collins v. Auger*, 577 F.2d at 1110 (*citing Collins v. Auger*, 428 F.Supp. 1079, 1082–83 (S.D.Iowa 1977)). To allow a psychiatrist to reiterate statements made to him is to force a defendant to choose between his privilege against self-incrimination and his right to assert an insanity defense at trial. As the Supreme Court has stated, a defendant should not be compelled to waive one right in order to assert another. *Simmons v. United States*, 390 U.S. 377, 393–94, 88 S.Ct. 967, 975–76, 19 L.Ed.2d 1247 (1968).

As Snethen's attorney failed to object to this evidence, Snethen lost his right to raise the issue on direct appeal. Iowa does not recognize a "plain error" rule. *State v. Tryon*, 431 N.W.2d 11, 16 (Iowa App.1988). Even alleged errors of constitutional magnitude must be preserved by a timely objection at trial. *Id.* Moreover, under state law, issues not raised on direct appeal may not be raised in a post-conviction petition unless "sufficient reason" is shown for the procedural default. *Polly v. State*, 355 N.W.2d 849, 855 (Iowa 1984). Iowa has adopted the cause and prejudice standard of *Wainwright v. Sykes* to determine whether it will hear an issue for the first time in a post-conviction petition. *Id.*

Snethen thus had to show "sufficient reason" for failing to object to Dr. Loeffelholz' testimony at trial. He raised the only claim available to him in his state post-conviction petition—ineffective assistance of counsel. In his *pro se* petition, Snethen stated that "[the] defendant did not receive a fair trial on the charge of murder, case no. 3869 in Polk County Courts, in the City of Des Moines." The state district court interpreted this complaint to include the assertion that his trial attorney, Mike Wilson, had provided ineffective assistance of counsel for failing to object to the psychiatrist's testimony.

On appeal, the Iowa Supreme Court stated that it would not consider this claim on its merits because Snethen had failed to specify the constitutional basis for the claim in his petition and therefore had not given the state adequate notice. *Snethen v. State*, 308 N.W.2d 11, 15–16 (Iowa 1981). Yet, it went on to find that Snethen's attorney was not ineffective because the legal basis for the constitutional objection articulated by this Court in *Collins v. Auger* was unavailable to Snethen's attorney at the time of his trial. *Id.* at 16. It also held that no prejudice had resulted from the admission of Dr. Loeffelholz' testimony as sufficient evidence existed to implicate Snethen in the homicide without the doctor's testimony. *Id.*

I do not believe that this Court is procedurally barred from addressing Snethen's due process claim in light of the Iowa Supreme Court's decision to address the ineffective assistance of counsel claim on the merits. To find otherwise is to place Snethen in an inescapable "Catch-22" situation. According to the Iowa Supreme Court, Snethen's attorney had no basis for an objection based on the fourteenth amendment at trial because the due pro-

cess argument did not exist at the time of Snethen's trial. Yet, when Snethen filed a second post-conviction petition in state court, as instructed by this Court in *Snethen v. Nix*, 736 F.2d 1241, 1246 (8th Cir. 1984), the Iowa Court of Appeals held that Snethen had not shown cause for failing to raise the sixth and fourteenth amendment issues *on direct appeal. See Snethen v. State*, 404 N.W.2d 593 (Iowa App.1986) (Table) (unpublished opinion). It does not explain, however, how Snethen could have done this in light of the Iowa Supreme Court's holding that the issue was novel at that time and in light of the state rule that constitutional errors not objected to at trial cannot be raised on direct appeal.

This Court now holds that a federal court cannot review the constitutionality of Dr. Loeffelholz' testimony because Snethen failed to raise the issue in his initial state post-conviction petition. This holding only confuses an already confusing procedural posture and sheds no light on how, under state and federal procedural limitations, Snethen should have proceeded. The mishmash of state and federal procedural limitations has made a review of the merits of Snethen's claim next to impossible.

The majority intimates that even if it addressed the merits of Snethen's claims, it would agree with the Iowa Supreme Court that the admission of Dr. Loeffelholz' testimony was harmless beyond a reasonable doubt. *See supra*, note 5. First, the Supreme Court of Iowa stated that, even without the testimony of Dr. Loeffelholz, sufficient evidence existed to "implicate" Snethen in the homicide. 308 N.W.2d at 16. As the majority notes, the standard for determining the effect of unconstitutional errors is much higher. We must determine whether the illegal admission of highly prejudicial evidence was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This places on the beneficiary of the constitutional error the burden of proving beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Id.*

I cannot say that the admission of Dr. Loeffelholz' testimony was not harmless beyond a reasonable doubt. The only other evidence indicating Snethen's guilt was the testimony of Snethen's step-brother Luke, who was originally arrested for the murder, and Snethen's mother, who was obviously prepared to sacrifice one son for another. Snethen's admission to the police that he was involved in the murder, although voluntary, did not amount to a full confession to the murder. The closest Snethen came to an actual confession was the statement "I will say I am a guilty suspect in the case, but I can't admit to any murder or anything."

While the equivocal "confession" was very general in nature, the account presented by Dr. Loeffelholz was very graphic and was consistent with the physical evidence presented at trial. If the jury had not been privy to the conversation between Dr. Loeffelholz and Snethen, I cannot say, beyond a reasonable doubt, that Snethen would have been convicted of murder in the first degree.

Because the admission of inculpatory statements made to a psychiatrist violated Snethen's due process right to a fair trial, and the issue was adequately raised in state court, I feel the proper recourse is to grant the writ of habeas corpus and to order the state to release Snethen from prison unless it provides him with a new trial within 90 days.

This case exemplifies more than any other the tortured route a prisoner must travel to obtain federal review of constitutional violations in state criminal proceedings. State and federal courts have, over the last few years, imposed more and more procedural limitations on post-conviction relief. These steps have been taken on the theory that prisoners can be discouraged from filing complaints. The statistics, however, do not support this assumption. For example, in Iowa, the number of prisoner petitions filed in federal district court has risen from 22 in 1968 to 398 in 1988. In 1966, this Court dealt with 53 prisoner cases. Last year, 815 prisoner cases, 38 percent of all appeals, were filed with the Circuit Court.

Prisoners and their representatives apparently are as innovative as the courts in attempting to find ways to avoid or to comply with artificial procedural barriers. As a result, state and federal courts at every level spend much time determining whether the prisoners have followed the proper road maps, rather than quickly reaching the merits of the matter and ending the case.

This case has been pending for fourteen years and no court, state or federal, has determined whether Snethen received a fair trial. In my view, the reliance on procedural rules to deprive Snethen and other prisoners of a constitutionally guaranteed fair criminal trial constitutes a miscarriage of justice. It certainly serves no other judicial purpose. For these reasons, I must dissent from Part II of the majority's opinion.